**Christopher D. PRICKETT, et al., Plaintiffs,**

v.

**DEKALB COUNTY, Defendant.**

No. CN.A.1:97–CV–3395–TWT.

United States District Court, N.D. Georgia. Atlanta Division.

Feb. 4, 2003.

Allan Leroy Parks, Jr., Parks Chesin & Walbert, Harlan Stuart Miller, III, Miller Billips & Ates, Atlanta, GA, for Christopher D. Prickett, Donald A. Cox, Robert L. Robertson, Joseph M. Hines, Walter B. Johnson, on behalf of themselves and all members of the DeKalb County Fire Department who consent to representation, plaintiffs.

Benton J. Mathis, Jr., Dana Kristin Maine, Freeman Mathis & Gary, Atlanta, GA, for DeKalb County, defendant.

## ORDER

THRASH, District Judge.

This is an action brought by current and former Fire Services Bureau employees of the DeKalb County Department of Public Safety. They seek overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* ("FLSA"). The case is before the Court on Motions for Summary Judgment [Doc. 133 & 138] filed by Plaintiffs and Defendant. For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion for Summary Judgment and denies Plaintiffs' Motion for Summary Judgment as untimely.

## I. BACKGROUND

Plaintiffs are five employees of the Fire Services Bureau of the DeKalb County Department of Public Safety. Defendant DeKalb County is a political subdivision of the State of Georgia. This action was filed by the five named Plaintiffs on November 10, 1997. They alleged that the County

owed them additional overtime compensation. Under federal law, local governments may elect to pay firefighters overtime only if they work more than 212 hours in a 28–day work period. FLSA, 29 U.S.C. § 207(k) (hereinafter referred to as the "7(k) exemption"). In the initial Complaint, the Plaintiffs alleged that the 7(k) exemption did not apply because their primary duty was not providing fire protection services, but rather emergency medical services. Plaintiffs also claimed that the FLSA entitles those firefighters with the rank of battalion chief or captain to the same overtime compensation rights as firefighters with lesser rank. Pursuant to 29 U.S.C. § 216(b), approximately 420 other DeKalb County firefighters filed written consents to representation by the Plaintiffs to assert claims for overtime compensation on their behalf.

On April 9, 1998, a tornado hit the Dunwoody area of DeKalb County, causing widespread damage. This damage required a vast effort from the DeKalb County Fire Department which required its firefighters to work extra hours in an effort to stem the damage caused by the tornado. In DeKalb County, firefighters typically work for 24 hours and then have the next 48 hours off (hereinafter referred to as the "24/48" schedule). (Wilder Aff. ¶ 16.) Shortly after the tornado struck, former DeKalb County Fire Chief Carlos Perez issued a memorandum which stated that, pursuant to the Alpha Bravo Emergency Recall Plan, all 24 hour shift personnel would be placed on a "40 hour work week/12 hour shifts." (Defendant's Ex. A.) By this, Perez meant that the firefighters would work for 12 hours and then have the next 12 hours off (hereinafter referred to as a "12/12 shift"). Accordingly, the firefighters worked the 12 hour ("12/12") shift schedule until Sunday April 12, 1998, at which time Perez placed them on a "24 on/24 off" schedule (hereinafter referred to as the "24/24 shift") under which the fire-

fighters were on duty for 24 hours and then had the next 24 hours off. (Defendant's Ex. B.) According to Perez, this 24/24 shift was to remain in effect until midnight Friday April 17, 1988, at which time the firefighters were to return to their normal 24/48 work schedule. *Id.* On September 22, 1998, Plaintiffs filed a Supplemental Complaint in which they alleged that Perez's memo stating that they would be placed on a "40 hour work week/12 hour shifts" removed them from the 7(k) exemption and requires that they be paid overtime for all hours worked over 40 in a 7 day work period.

Following lengthy and contentious discovery, the Defendant moved for summary judgment on all of Plaintiffs' overtime claims. This Court held that the 7(k) exemption applied and that the battalion chiefs and captains were not entitled to overtime. As to the tornado claims, the Defendant argued that, because Perez clearly had no legal authority to reverse DeKalb County's valid adoption of the 7(k) exemption, whatever actions Perez is alleged to have taken could not have changed the firefighters' overtime status and that the firefighters, therefore, were entitled to overtime only if they worked more than 212 hours in a 28 day period. This Court agreed with Defendant and granted summary judgment as to Plaintiffs' tornado claims. (District Court Order, dated March 29, 2000, at 25–6 [Doc. 99] (hereinafter "District Court Order")). However, on appeal the Eleventh Circuit ruled that this Court "erred in finding that then-Chief Perez's alleged lack of authority to make work schedule changes absolved Defendant of its responsibilities under the FLSA" and that "[t]here are therefore issues of material fact with respect to this claim." (Eleventh Circuit Order, dated May 3, 2001, at 8 [Doc. 111] (hereinafter "Eleventh Circuit Order")). The District Court Order granting sum-

mary judgment to the Defendant on the applicability of the 7(k) exemption was affirmed. The Eleventh Circuit remanded the case back to the District Court. Both the Plaintiffs and DeKalb County have now filed Motions for Summary Judgment. Those motions are the subject of this Order.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. *Plaintiffs' Motion for Summary Judgment*

The deadline for filing motions for summary judgment in this action was July 1, 2002. (District Court Order, dated June 20, 2002 [Doc. 132].) The Plaintiffs did not file a motion for summary judgment by the deadline. Plaintiffs filed their brief in op-

position to Defendant's motion for summary judgment and brief in support of a cross motion for summary judgment on August 12, 2002. Thus, pursuant to Local Rule 56.1.C, Plaintiffs' motion for summary judgment is untimely and should be dismissed. The Court will consider Plaintiffs' brief as a brief in opposition to Defendant's motion for summary judgment.

### B. *Consent to Representation*

■ Section 16(b) of the FLSA states that "[a]n action to recover ... liability ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike class actions brought pursuant to Rule 23 "no employee shall be a party plaintiff to any such action unless he gives consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Without such written consent, "no person can become a party plaintiff and no person will be bound by or may benefit from a judgment." *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 886 (11th Cir.1983). The Fifth Circuit in *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286 (5th Cir.1975) [1] elaborated on the purpose and effect of this statutory provision. The court stated:

> There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b). In a Rule 23 proceeding a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by the judgment, whether favorable or unfavorable, unless he has

---

**1.** In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding prece-

dent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

'opted out' of the suit. Under § 16(b) of FLSA, on the other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class; that is, given his written, filed consent.

*Id.* at 288.

■ In the instant action, at the time the Plaintiffs filed their consent forms, the class members could not consent to the "tornado claim" specifically because the tornado crisis had not yet occurred. The Complaint was later amended to include the "tornado claim." No class member has filed an additional consent form since the tornado claim was added. Further, the only claim remaining in the action is the tornado claim. The Court has dismissed all the claims that did exist at the time the class members filed their consent forms.

■ Defendant contends that the tornado claim is wholly separate and unrelated to the claims for which the class members consented to representation. They argue that the fact that the Plaintiffs chose to amend an existing complaint to add this tornado claim should not relieve them of the obligation to gain consent of class members to bring this action on their behalf. Defendant maintains that the FLSA's opt-in provision should be interpreted to mean that if a plaintiff wishes to bring a class action for a particular claim, then the putative class members must consent to representation for that claim, not for some other unrelated claim. Defendant asserts that no class member filed a consent form for the only claim left in this lawsuit. Plaintiffs argue that class members did not need to file consent forms for the new tornado claims because these class members previously filed consent forms authorizing the named plaintiffs to represent them in the action which includes other unrelated claims. Section 216(b)

does not state that employees who have already filed consent forms, and therefore already become plaintiffs, must file new and separate consent forms as new claims arise. Furthermore, the FLSA must be given a liberal construction in favor of the employee. *H.B. Zachry Co. v. Mitchell*, 262 F.2d 546, 549 (5th Cir.1959).

On the other hand, the Court is bound to following the teaching of *LaChapelle* that Rule 23 class actions are not permissible in FLSA cases. The claims arising out of the tornado disaster are completely separate, independent and unrelated to the claims originally asserted in the Complaint. Allowing the named Plaintiffs to assert these claims on behalf of others, in essence, allows them to pursue a Rule 23 class action as to those claims. The action would proceed without the procedural protections of Rule 23, including the right to opt out under Rule 23(c), or the necessity to opt in under Section 16(b) of the FLSA. Notwithstanding the remedial nature of the FLSA, such an outcome is completely at odds with the 1947 amendments to the FLSA. "The 1947 amendment eliminated the agent or representative type action and, although it retained the class action, it specifically required that all employees wishing to have their rights adjudicated 'opt in' as parties plaintiff." *LaChapelle*, 513 F.2d at 287, n. 6. The unnamed Plaintiffs have not shown that they wish to have their rights adjudicated in this action by opting in for the tornado disaster claim. They opted in to an action challenging the 7(k) exemption; this is a completely separate and unrelated action. Therefore, the Defendant's motion for summary judgment should be granted as to any claims other than those of the five named Plaintiffs.

### C. *Tornado Disaster Overtime Claims*

■ The FLSA generally requires employers to compensate employees at the

overtime rate (time and one-half) for all work performed in excess of 40 hours per week. 29 U.S.C. § 207(a); *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802 (11th Cir.1992). An exception to this rule is found in Section 7(k) which provides:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities ... if (1) in a work period of twenty-eight (28) consecutive days the employee receives for tours of duty which in the aggregate exceed ... [212 hours] ... compensation at a rate of not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k); *Birdwell*, 970 F.2d at 804.

The Eleventh Circuit, in its May 3, 2001 Order, held that, "[a]ssuming that then-Chief Perez was not authorized by statute to alter Plaintiffs' work schedule during the tornado disaster of April 1998, [the County] is still required to pay overtime for those hours worked in excess of forty hours per week." The Eleventh Circuit went on to state that "Defendant thus cannot claim that it is not responsible for then-Chief Perez's change in Plaintiffs' work schedule." Finally, it held that

> The district court thus erred in finding that then-Chief Perez's alleged lack of authority to make work schedule changes absolved Defendant of its responsibilities under the FLSA. There are therefore issues of material fact with respect to this claim, and summary judgment was inappropriate.

(Eleventh Circuit Order, May 3, 2001, at 8.)

Under the FLSA, the term "work period" refers to the pay period, not the actual hours or shifts worked by employees. 29 U.S.C. § 207(k); 29 C.F.R. § 553.224. Thus, the term "work period" in section 7(k) of the FLSA refers to the 28 day pay period, not the day-to-day shifts or work schedules of employees. *Id.* To the contrary, Section 7(k) says nothing about work shifts or work schedules, and there is nothing in the FLSA which states that firefighters must work a certain schedule to qualify for the 7(k) exemption. In fact, it is undisputed that DeKalb County paid the Plaintiffs all overtime due, under Section 7(k) of the FLSA, as a result of Chief Perez's change in "work schedule."

The issue is whether there was also a change in the "work period" that took the firefighters out of the Section 7(k) exemption. The Defendant says that there was no such change, but the Court cannot agree without violating the mandate of the Eleventh Circuit. Therefore, the Court will interpret the Eleventh Circuit's usage of the term "work schedule" as actually meaning "work period." Thus, the Eleventh Circuit held that then-Chief Perez did in fact alter the "work period" not "work schedule." By doing so, the Eleventh Circuit held that Chief Perez modified Plaintiffs' "work period" from the previously applicable 28 day "work period" to one not recognized by Section 7(k) and implemented a new "work period" of a "40 hour work week" for the work week prior to midnight on April 17, 1998. After that, the firefighters returned to their normal work schedule, *i.e.*, 24/48 with a 28 day work period, according to Chief Perez's April 11, 1998 memorandum. (Defendant's Ex. B.) Therefore, this case will proceed to trial on the question of the amount of overtime due to the named Plaintiffs for the hours, if any, worked in excess of 40 hours for the altered pay period.

### D. *Liquidated Damages*

■ Under 29 U.S.C.A. § 216(b), affected employees shall recover liquidated damages from their employer for violations of the FLSA. An employer may avoid the

mandatory nature of an award of liquidated damages if the court chooses not to make an award where the employer shows its actions were in good faith and shows it had reasonable grounds for believing that those actions did not violate the FLSA. 29 U.S.C. §§ 216(b) and 260; *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1573 (11th Cir.1988). 29 C.F.R. § 790.22 provides that:

> (a) ... in any action brought under the [FLSA] to recover unpaid ... overtime compensation...the court may, subject to prescribed conditions, in its sound discretion award no liquidated damages ... (b) the conditions prescribed as prerequisites to such an exercise of discretion are two: (1) the employers must show to the satisfaction of the court, that the act or omission giving rise to such action was in good faith; and (2) he must show also, to the satisfaction of the court, that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]. If these conditions are met by the employer against whom the suit is brought, the court is permitted, but not required, in its sound discretion, to reduce or eliminate the liquidated damages which would otherwise be required.

Defendant's Motion for Summary Judgment on this issue is premature. Only after a finding of liability has been reached does the Court reach the issue of liquidated damages. The Court has no discretion at the outset. The finding of a violation of the FLSA necessitates an award of liquidated damages. Only if the Defendant then succeeds in persuading the Court on the Section 790.22 factors does the Court then have discretion to either award or decline an award of liquidated damages. *Glenn*, 841 F.2d at 1573. Because no liability has been determined in the instant action, Defendant's Motion for Summary Judgment on the issue of liquidated damages is denied.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment [Doc. 133] is GRANTED IN PART AND DENIED IN PART and Plaintiffs' Motion for Summary Judgment [Doc. 138] is DENIED.