# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 2, 2005        Decided May 26, 2006

No. 05-7046

CHRISTINE LINDSAY AND
ROBERT MCGRUDER, INDIVIDUALLY
AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED,
APPELLANTS

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01213)

---

*Charles E. Tompkins* argued the cause for the appellant.
*Michael D. Hausfeld* was on brief.

*Eric Hemmendinger* argued the cause for the appellee.
*Bruce S. Harrison* and *Daniel A. Cantor* were on brief.

Before: HENDERSON, ROGERS and BROWN, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Christine Lindsay and Robert McGruder (appellants) work as auto damage adjusters for the Government Employees Insurance Company (GEICO). GEICO classified all auto damage adjusters as administrative employees, thereby making them ineligible for overtime pay under section 13(a)(1) of the Fair Labor Standards Act, 29 USC §§ 201 *et seq.* (FLSA or Act). The appellants brought this action against their employer, alleging that GEICO deliberately miscategorized them as administrative employees to avoid paying them overtime pay in violation of the FLSA and the New York Minimum Wage Act, N.Y. Lab. Law §§ 650 *et seq.* (New York Act). They sought certification of an "opt-in" class under the FLSA. They also sought certification of an "opt-out" class under the New York Act, using Federal Rule of Civil Procedure 23. The district court denied certification of the state law class, concluding that the FLSA class certification procedure requiring all class members to affirmatively opt in precluded it from exercising supplemental jurisdiction over those state law claimants who did not affirmatively join the FLSA claim. We disagree and therefore reverse the order denying certification and remand to the district court.

I.

The appellants' FLSA claim alleged not only that the nature of an auto damage adjuster's job duties entitles them to overtime pay under FLSA but also that GEICO's classification of auto damage adjusters as administrative employees constitutes a willful violation of the Act.[1] *See* 29 U.S.C. § 207(a). They sued

---

[1] The FLSA requires an employer to pay an employee one-and-one-half times his regular pay rate for work in excess of 40 hours per week. *See* 29 U.S.C. § 207(a). It exempts from its overtime provision "bona fide executive, administrative, or professional" employees. *See* 29 U.S.C. § 213(a)(1). The Act imposes a two-year statute of limitations on wage and hour claims; the period is extended to three years if the employer's violation is "willful." 29 U.S.C. § 255(a).

on behalf of themselves and all other similarly situated auto damage adjusters under 29 U.S.C. § 216(b).[2] Section 216(b) is part of the so-called Portal-to-Portal Act, which the Congress enacted in 1947 in response to judicial interpretations of the FLSA.[3] *See IBP, Inc. v. Alvarez*, 126 S. Ct. 514, 519 (2005). Of particular relevance here, section 216(b) provides that, in an action brought under, inter alia, section 207—the overtime pay provision—of the FLSA, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). That is, potential class members must affirmatively join ("opt in") the lawsuit. *See Thompson v. Sawyer*, 678 F.2d 257, 269 (D.C. Cir. 1982).

---

[2] Section 216(b) provides, inter alia: "An action to recover the liability prescribed in either of the preceding sentences [expressly including section 207 liability] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

[3] The Portal-to-Portal Act refers to employees' "portal-to-portal" activities—"the time spent by a workman in traveling from the entrance to his employer's property to his actual working place (as in a mine) and in returning after the work shift," Webster's Third New International Dictionary 1768 (1993). The Supreme Court had held that these activities constituted "work" or part of the "workweek" under the FLSA's minimum wage and overtime provisions, respectively. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946); *Armour & Co. v. Wantock*, 323 U.S. 126 (1944); *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944). The Portal-to-Portal Act provides elsewhere that an employer does *not* incur liability for failing to pay minimum wages or overtime for an employee's portal-to-portal activities. *See* 29 U.S.C. § 252(a).

Appellant McGruder also alleged that the nature of a New York-based auto damage adjuster's job duties entitles those adjusters to overtime pay under the New York Act as well. *See* N.Y. Lab. Law §§ 663(1) (creating civil action for violation of compensation provisions); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (requiring overtime compensation of time-and-one-half).[4] McGruder sought to bring the state law claim on behalf of himself and all other similarly situated New York-based auto damage adjusters pursuant to Federal Rule of Civil Procedure 23. Unlike the procedure set out in 29 U.S.C. § 216(b), Rule 23 class certification requires notice to all potential class members that they must affirmatively decline to join ("opt out") the lawsuit if they do not want to be class members. *See* Fed. R. Civ. P. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances . . . that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded"); *In re Veneman*, 309 F.3d 789, 792 (D.C. Cir. 2002) ("Certification pursuant to Rule 23(b)(3), however, comes with certain procedural requirements: Because members of a class seeking substantial monetary damages may have divergent interests, due process requires that putative class members receive notice and an opportunity to opt out.").

The district court first determined that all GEICO auto damage adjusters nationwide were similarly situated within the meaning of 29 U.S.C. § 216(b). *See Lindsay v. Gov't Employees Ins. Co.*, C.A. No. 04-1213 (D.D.C. Nov. 9, 2004). Accordingly, notices were sent to all potential class members requesting them to affirmatively opt into the action if they so

---

[4] By regulation, New York adopted the FLSA's requirement that an employer pay an employee time and one-half for overtime. The regulation also excludes "bona fide executive, administrative, or professional" employees. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

desired. The district court, however, subsequently declined to certify McGruder's requested class of GEICO auto damage adjusters with state law claims under the New York Act. *See Lindsay v. Gov't Employees Ins. Co.*, 355 F. Supp. 2d 119 (D.D.C. 2004). First noting that "[t]his Circuit has yet to address the question of supplemental jurisdiction in the context of a federal opt-in class and a state opt-out class," the district court briefly surveyed the decisions from other courts—both district and circuit—and ultimately concluded that "it would be inappropriate to exercise jurisdiction over plaintiffs who have not affirmatively opted into the federal action." *Id.* at 120, 121. Thus, it decided to exercise its supplemental jurisdiction over *only* the state law claims "of plaintiff McGruder and any New York plaintiff who is eligible to opt into the federal action and opts in by filing a notice of consent." *Id.* at 123. We allowed the appellants to appeal the order denying class certification pursuant to Federal Rule of Civil Procedure 23(f). *See In re Lindsay*, No. 05-8001 (D.C. Cir. Mar. 18, 2005). Because subject matter jurisdiction is a prerequisite to class certification, it is properly reviewed in a Rule 23(f) interlocutory appeal. *Cf. In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 108 (D.C. Cir. 2002) (constitutional standing issue properly raised in Rule 23(f) appeal). Accordingly, we consider the district court's denial of class certification based on its decision not to exercise supplemental jurisdiction.

## II.

Although it is not clear from the district court order whether the court made its supplemental jurisdiction ruling under 28 U.S.C. § 1367(a)[5] or 28 U.S.C. § 1367(c),[6] we conclude that its decision was based on subsection (a). First, its discussion of certification of the state law claims does not mention subsection

---

[5] *See infra* p. 6.

[6] *See infra* note 8.

(c). In contrast, its discussion regarding the exercise of its supplemental jurisdiction over the state law claims of the FLSA class members does. *Lindsay*, 355 F. Supp. 2d at 120-22. Moreover, the authority upon which the district court primarily relies construed section 1367(a) to divest federal courts of subject-matter jurisdiction over state law claimants who do not also have FLSA claims. *Rodriguez v. The Texan, Inc.*, No. 01-C-1478, 2001 WL 1829490, at *1-*2 (N.D. Ill. 2001). Because the district court order was based on section 1367(a), we review its decision de novo. *See Harris v. Sec'y, Dep't of Veterans Affairs*, 126 F.3d 339, 345-346 (D.C. Cir. 1997) ("We review the District Court's dismissal for want of jurisdiction de novo, because the District Court dismissed on the grounds that it lacked the original jurisdiction necessary for supplemental jurisdiction under 28 U.S.C. § 1367(a), and not on the grounds that it was exercising its discretion to dismiss supplemental claims remaining after dismissal of original claims as authorized by 28 U.S.C. § 1367(c)(3).").

28 U.S.C. § 1367(a) provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts *shall have* supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (emphasis added). Leaving aside the beginning proviso for the moment, we think it is clear that section 1367(a) authorizes a district court to exercise its supplemental jurisdiction in mandatory language. *See New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101

F.3d 1492, 1509 (3d Cir. 1996) ("By its language § 1367(a) confers jurisdiction in mandatory terms to include those cases 'which form part of the same case or controversy under Article III of the United States Constitution' (except as expressly excluded by statute or as provided for in subsections (b) and (c))."); *McCoy v. Webster*, 47 F.3d 404, 406 n.3 (11th Cir. 1995) ("Section 1367(a) *requires* the district court to exercise supplemental jurisdiction over claims which are closely related to claims over which the district court has original jurisdiction." (emphasis added)); *Executive Software N. Am. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1555 (9th Cir. 1994) ("By use of the word 'shall,' the statute makes clear that if power is conferred under section 1367(a), and its exercise is not prohibited by section 1367(b), a court can decline to assert supplemental jurisdiction over a pendent claim only if one of the four categories specifically enumerated in section 1367(c) applies."). In addition to its reference to subsection (b)'s excepting provision (which relates to diversity jurisdiction only), section 1367(a) includes three other bases for declining to exercise supplemental jurisdiction: (1) a federal statute "expressly provide[s] otherwise"; (2) the "other" claims are *not* "so related" to the claims within the court's original jurisdiction that they constitute part of the same "case or controversy"; and (3) the excepting provisions of section (c)(1)-(4), which allow the court in its discretion to decline to exercise supplemental jurisdiction.[7]

---

[7] Subsection (c) provides:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
    (1) the claim raises a novel or complex issue of State law,
    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
    (3) the district court has dismissed all claims over which it has original jurisdiction, or

First, we do not agree with the district court that 29 U.S.C. § 216(b) represents the kind of statute that is described in section 1367(a)'s opening proviso. Section 1367(a) requires a court to exercise supplemental jurisdiction, unless, inter alia, "expressly provided otherwise by Federal statute." 28 U.S.C. § 1367(a). While the United States Supreme Court has not yet interpreted this exception, in *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 696-97 (2003), it has interpreted an analogous provision in the removal statute. *See* 28 U.S.C. § 1441(a). Section 1441(a) permits the removal of a case over which the district court has original jurisdiction "[e]xcept as otherwise expressly provided by Act of Congress." In *Breuer*, the Court warned against reading the term "expressly" out of the proviso. 538 U.S. at 696-97. There, the plaintiff argued that the word "maintain[ ]" in section 216(b)'s provision that "[a]n action [to recover overtime pay under section 207 of FLSA] may be maintained . . . in any Federal or State court" prohibited the defendant from removing the action to federal court. *Id.* at 694. The Court found that "[n]othing on the face of 29 U.S.C. § 216(b) looks like an express prohibition of removal, there being no mention of removal, let alone of prohibition." *Id.* Ultimately, the Court decided that "maintain[ ]" was too ambiguous to prohibit removal and rejected the plaintiff's argument "that any text, even when ambiguous, that might be read as inconsistent with removal is an 'express' prohibiting provision under the statute." *Id.* at 695. Likewise with section 216(b)'s relation to section 1367(a)—not only does section 216(b) not expressly prohibit the exercise of supplemental jurisdiction over the state law claims of opt-out class members, it includes no mention of supplemental jurisdiction at all. *See*

---

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

*Breuer*, 538 U.S. at 694-95 (section 216(b) does not prohibit removal, in part because removal is not mentioned).

The portion of section 216(b) relevant to supplemental jurisdiction states, "No employee shall be a party plaintiff to any such *action* unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought," 29 U.S.C. § 216(b) (emphasis added). GEICO argues that section 216(b)'s use of the term "action"—as opposed to "claim" or "cause of action"—manifests that the Congress intended to require opting-in for the entire litigation, not merely the FLSA claims. We are not persuaded by this argument. Even assuming GEICO's interpretation of section 216(b) is correct, the term "action" does not meet section 1367(a)'s requirement of an "express[ ]" prohibition. GEICO's argument is precisely the sort of "verbal hook" the Court rejected in *Breuer*. 538 U.S. at 696. Our conclusion is also supported by other legislation in which the Congress has *expressly* prohibited federal courts from exercising supplemental jurisdiction over state law claims.[8] *See Breuer*, 538 U.S. at 696 ("The need to take the express exception requirement seriously is underscored by examples of indisputable prohibitions . . . in a number of other statutes."); *cf. Dir. of Revenue of Mo. v. CoBank ACB*, 531 U.S. 316, 325 (2001) ("Had Congress intended to confer upon banks for cooperatives the more comprehensive exemption from taxation that it had provided to farm credit banks and federal land bank

---

[8] The Violence Against Women Act provides in part that section 1367 does not "confer on the courts of the United States jurisdiction over any State [domestic] law claim." 42 U.S.C. § 13981(e)(4). In *United States v. Morrison*, 529 U.S. 598 (2000), the Supreme Court invalidated (on Commerce Clause grounds) the Violence Against Women Act. Nonetheless, section 13981(e)(4) illustrates that if the Congress intends to divest federal courts of supplemental jurisdiction, it does so expressly—as section 1367(a) requires.

associations, it would have done so expressly as it had done elsewhere in the Farm Credit Act.").

Second, we consider GEICO's argument that the state law claims (brought under the New York Act) are not part of the same case or controversy as the FLSA claims. In *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 125 S. Ct. 2611 (2005), the United States Supreme Court recently held that "where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." *Id.* at 2615. With respect to the exercise of supplemental jurisdiction, we find the *Exxon Mobil* holding instructive, if not controlling, here. In both, not all of the plaintiffs could invoke the district court's original jurisdiction and the remaining plaintiffs—with state law claims—were before the court, if at all, under its supplemental jurisdiction. The fact that *Exxon Mobil* is a diversity jurisdiction action, *see* 28 U.S.C. § 1332, and this litigation invokes federal question jurisdiction, *see* 28 U.S.C. § 1331, is of no moment here.[9] Section 1367(a) is written in terms of "any civil action of which the district courts have original jurisdiction" and thus it encompasses both diversity jurisdiction and federal question jurisdiction actions. In *Exxon Mobil*, the Court had before it the decisions of two courts of appeal reaching different results. *Id.* at 2615. In one appeal, the plaintiffs attempted to bring a diversity class action in which some of the plaintiffs' claims met

---

[9] Because *Exxon Mobil* involved diversity jurisdiction, the Court also considered the section 1367(b) exception which applies only to diversity jurisdiction. It went on to conclude that section 1367(b) did not "withhold[ ] supplemental jurisdiction over the claims of plaintiffs permissively . . . certified as class-action members pursuant to Rule 23." *Exxon Mobil*, 125 S. Ct. at 2621.

the amount-in-controversy requirement of section 1332 and some did not. *Id.* at 2616. The Eleventh Circuit had upheld the district court's exercise of supplemental jurisdiction over the claims of those plaintiffs who did not meet the requirement. *Id.* The other appeal involved a diversity personal injury lawsuit in which only some of the plaintiffs (all members of one family) met the amount-in-controversy requirement. *Id.* The First Circuit had affirmed the district court's decision not to exercise supplemental jurisdiction over the family members who did not meet the requirement. *Id.* The Supreme Court sided with the Eleventh Circuit, holding that section 1367 allowed the exercise of supplemental jurisdiction over those plaintiffs who did not meet the amount-in-controversy requirement provided at least one plaintiff met the requirement. *Id.* at 2625. The Court declared:

> If the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a "civil action" within the meaning of § 1367(a), even if the civil action over which it has jurisdiction comprises fewer claims than were included in the complaint. Once the court determines it has original jurisdiction over the civil action, it can turn to the question whether it has a constitutional and statutory basis for exercising supplemental jurisdiction over the other claims in the action.

*Id.* at 2620-21. We interpret this language to mean that so long as the district court has original jurisdiction over a single claim, it may exercise supplemental jurisdiction over any additional claim that forms part of the same Article III case or controversy.

A federal claim and a state law claim form part of the same Article III case or controversy if the two claims "derive from a common nucleus of operative fact" such that "the relationship between [the federal] claim and the state claim permits the

conclusion that the entire action before the court comprises but one constitutional 'case.' " *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-165 (1997) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)) (alteration in original). Here, the complaint alleged that members of both classes performed the same type of work for the same employer and were deprived of overtime compensation as a result of the same action taken by their employer. It is clear to us that the two claims "derive from a common nucleus of operative fact" and thus form part of the same Article III case or controversy. *See Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir. 1995) (where "the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious"); *see also Pueblo Int'l, Inc. v. De Cardona*, 725 F.2d 823, 826 (1st Cir. 1984) (supplemental jurisdiction properly exercised over state claims where original jurisdiction existed under parallel federal law because "[t]he facts necessary to prove a violation of one are practically the same as those needed to prove a violation of the other").

In addition, GEICO argues that there is a conflict between the opt-in procedure under section 216(b) and the opt-out procedure under Rule 23(c)(2)(B). While there is unquestionably a difference—indeed, an opposite requirement—between opt-in and opt-out procedures, we doubt that a mere *procedural* difference can curtail section 1367's *jurisdictional* sweep.[10] Regardless of any policy decision implicit in section 216(b)'s opt-in requirement, *see DeAsencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003) ("[M]andating an opt-in class or an opt-out class is a crucial policy decision. Congress has selected an opt-in class for FLSA actions."), in enacting section 1367(a), the Congress made its intent regarding the exercise of supplemental jurisdiction clear: "Congress conferred a broad grant of jurisdiction upon the

---

[10] To state the obvious, Rule 23 does not fit section 1367(a)'s "[f]ederal statute" exception.

district courts, indicating a congressional desire that, 'supplemental jurisdiction at least in the first instance . . . go to the constitutional limit, to which it appeared to be carried in . . . [*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)].' " *In re Walker*, 51 F.3d 562, 571-72 (5th Cir. 1995) (quoting *Rodriguez v. Pacificare of Tex.*, 980 F.2d 1014 (5th Cir. 1993), *cert. denied*, 508 U.S. 956 (1993)) (concluding section 1367 does not confer supplemental jurisdiction on bankruptcy court) (alterations in original).

Although, based on the foregoing discussion, we reverse the district court's denial of class certification to the state law claimants who did not also opt into the FLSA claim and remand for further proceedings, we emphasize that on remand the district court remains free to consider whether it "may decline to exercise" supplemental jurisdiction under 28 U.S.C. § 1367(c). Its ability to decline to exercise supplemental jurisdiction over the claims of those class members with state law claims only, however, is circumscribed. In declining to exercise supplemental jurisdiction, it did not rely on section 1367(c)(1)-(4) and, we think, with good reason. First, as the district court noted, the state law claims are not novel or complex under section 1367(c)(1). *Lindsay*, 355 F. Supp. 2d at 122. It also concluded that the state law claims would not predominate over the FLSA claims under section 1367(c)(2).[11]

---

[11] The district court's decision to exercise supplemental jurisdiction over the state law claims of only those claimants who also opted into the FLSA claim is thus unlike the holding in *DeAsencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003). In *DeAsencio*, the plaintiffs asserted both FLSA claims and Pennsylvania state law claims. *Id.* at 301. The Third Circuit found that the state law claims predominated over the FLSA claims and that they were novel and complex, using the language of section 1367(c)(1) and (2). *Id.* at 311. First, it stated, the state claims required proof of an implied contract between the employer, Tyson, and its employees, thereby requiring substantial "additional testimony and proof . . . beyond that required

14

*Id.* Predomination under section 1367(c)(2) relates to the type of claim and here the state law claims essentially replicate the FLSA claims—they plainly do not predominate.[12] On remand, the district court may consider whether "exceptional circumstances" exist and whether "there are other compelling reasons for declining jurisdiction" under section 1367(c)(4). In determining whether there are "other compelling reasons," the district court must balance "economy, convenience, fairness, and comity," as the Supreme Court instructed in *Gibbs*. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *Gibbs*, 383 U.S. at 726-27). It may not, however, use subsection (c)(4) to conclude that section 216(b)'s opt-in provision ousts the court of supplemental jurisdiction over the state law class of those

---

for the FLSA action." *Id.* at 310. Second, the court found that the size disparity between the two classes "may constitute substantial predomination by the state . . . action." *Id.* Finally, the court noted that the state claim involved "novel and complex issues of state law" absent in the federal action. *Id.* at 311. It concluded that exercising supplemental jurisdiction in those circumstances would render the FLSA claim "an appendage to the more comprehensive state action" and therefore disallowed the exercise of supplemental jurisdiction. *Id.* at 312.

[12] If "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726-27. Some courts, including the *DeAsencio* court, have concluded that "the disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive." *DeAsencio*, 342 F.3d at 311. The correctness of this interpretation aside, we believe it is inapplicable here where the two classes are almost identical in size. At the time of briefing, approximately 204 claimants had filed consents to opt into the FLSA claim, *see* Appellants' Br. 3, and the district court estimated the state law claimants to number approximately 228, *see Lindsay*, 355 F. Supp. 2d at 121.

claimants who have not joined the FLSA claim. We do not view the difference between the opt-in procedure provided by section 216(b) for FLSA claims and the opt-out procedure for state law claims provided by Rule 23 as fitting the "exceptional circumstances"/"other compelling reasons" language of section 1367(c)(4).

For the foregoing reasons, we reverse the district court's denial of class certification to those state law claimants who did not join the FLSA claim and remand for further proceedings consistent with this opinion.

*So ordered.*