In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3029

DENEENE D. ERVIN, *et al.*,

*Plaintiffs-Appellants*,

*v.*

OS RESTAURANT SERVICES, INC.,
doing business as Outback Steakhouse,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 1091—**Ronald A. Guzmán**, *Judge.*

ARGUED APRIL 2, 2010—DECIDED JANUARY 18, 2011

Before FLAUM, WOOD, and HAMILTON, *Circuit Judges.*

WOOD, *Circuit Judge.* In this appeal we consider whether employees who institute a collective action against their employer under the terms of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), may at the same time litigate supplemental state-law claims as a class action certified according to Federal Rule of Civil Procedure 23(b)(3). The district court thought

not; it rejected the plaintiffs' effort to proceed as a class under Rule 23(b)(3) on the ground that there is a "clear incompatibility" between the FLSA proceeding and the proposed class action. The problem, as the court saw it, stems from the fact that the FLSA requires potential plaintiffs to opt *in* to participate in an action, while the plaintiffs in a Rule 23(b)(3) class action are included in the case unless they opt *out*. Trying to use both systems side-by-side would be rife with complications, it concluded; more formally, it held that one could never find the superiority requirement of Rule 23(b)(3) satisfied if the case also involved an FLSA collective action.

The question whether these two distinct types of aggregate litigation may co-exist within one case has divided the trial courts in this circuit and elsewhere. In the Northern District of Illinois alone, compare *Barragan v. Evanger's Dog and Cat Food Co.*, 259 F.R.D. 330 (N.D. Ill. 2009), and *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091 (N.D. Ill. 2000), with *Riddle v. National Sec. Agency, Inc.*, 2007 WL 2746597 (N.D. Ill. 2007), *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574 (N.D. Ill. 2004), and *Rodriguez v. The Texan, Inc.*, 2001 WL 1829490 (N.D. Ill. 2001). As far as we can tell, no court of appeals has yet had occasion to address it. But see *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 753-55, 760-62 (9th Cir. 2010) (holding that a district court properly certified a Rule 23(b)(2) class along with an FLSA collective action and properly exercised supplemental jurisdiction over the state-law claim); *Lindsay v. Government Employees Ins. Co.*, 448 F.3d 416, 420-25 (D.C. Cir. 2006) (concluding,

in the context of an appeal under Rule 23(f), that the FLSA does not necessarily preclude an exercise of supplemental jurisdiction over related state-law claims); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 307-12 (3d Cir. 2003) (concluding that a district court presiding over an FLSA collective action should not have exercised supplemental jurisdiction over parallel state-law claims).

We conclude that there is no categorical rule against certifying a Rule 23(b)(3) state-law class action in a proceeding that also includes a collective action brought under the FLSA. (We refer to these as "combined" actions, rather than "hybrid" actions, to avoid confusion with other uses of the term "hybrid"—*e.g.*, for cases certified under more than one subsection of Rule 23(b).) In combined actions, the question whether a class should be certified under Rule 23(b)(3) will turn—as it always does—on the application of the criteria set forth in the rule; there is no insurmountable tension between the FLSA and Rule 23(b)(3). Nothing in the text of the FLSA or the procedures established by the statute suggests either that the FLSA was intended generally to oust other ordinary procedures used in federal court or that class actions in particular could not be combined with an FLSA proceeding. We reverse the district court's class-certification determination and remand for further consideration in accordance with this opinion.

**I**

The plaintiffs are former employees of an Outback Steakhouse in Calumet City, Illinois. The restaurant is

owned and operated by the defendant, OS Restaurant Services, Inc.; we refer to the defendant as "Outback" throughout this opinion. The employees sued Outback on behalf of themselves and all others who had previously worked or were currently employed at the restaurant as hourly or tipped employees. (A tipped employee, like a waiter or bartender, is paid a tip-credit wage, which is less than the minimum wage; the expectation is that her earnings for each pay period, including both the base wage and tips, will equal or exceed the minimum wage.)

The complaint alleges that Outback's employee policies run afoul of the FLSA, the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("IWPCA"). Specifically, the plaintiffs argue that Outback violated the minimum wage and maximum hour provisions of both the FLSA and the IMWL in three ways: (1) by requiring tipped employees to perform tasks during which they could not earn tips; (2) by using money that tipped employees were required to deposit in a "tip pool" to make up for shortages in restaurant cash registers; and (3) by demanding that the tipped employees contribute an excessive amount of their tips to the tip pool. The plaintiffs' state-law claim under the IWPCA is based on their allegation that Outback altered entries in its timekeeping system to reflect fewer hours for each person, thereby enabling it to pay its employees for less time than they actually worked.

The plaintiffs moved for conditional approval of a federal collective action under section 16(b) of the FLSA,

29 U.S.C. § 216(b), which authorizes employees to act together to seek redress for violations of the statute's minimum wage and maximum hour provisions, see 29 U.S.C. §§ 206 and 207. The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action. See, *e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010). The plaintiffs proposed that notice be given to anyone who had worked as a tipped employee at Outback since 2005. At the same time, they sought certification under Rule 23(b)(3) of three different classes alleging state-law claims: (1) all tipped employees who earned less than minimum wage, in violation of the IMWL; (2) all tipped employees who worked more than 40 hours per week but were not paid overtime, in violation of the IMWL; and (3) all employees who by virtue of Outback's incorrect timekeeping were not paid for some of the time that they worked, in violation of the IWPCA.

A magistrate judge recommended that the district court permit the federal collective action to proceed but deny without prejudice certification of the Rule 23(b)(3) state-law classes. While the judge was satisfied that the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) had been met, he had one minor reservation and one major concern about the predominance and superiority requirements for a (b)(3) class. The minor point related to the predominance requirement: the plaintiffs could show, he thought, that

common questions predominated with respect to their IWPCA theory and two of their three IMWL theories, but not for the claim that Outback forced tipped employees to perform non-tip duties. The more important stumbling block was the requirement "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The judge decided that a Rule 23(b)(3) class will never be superior when another part of the case is proceeding under FLSA section 16(b), because of what he saw as the conflict between the two different forms of aggregate litigation.

The district court adopted the magistrate judge's recommendation. It refused to certify the class because there was "clear incompatibility between the 'opt out' nature of a Rule 23 action and the 'opt in' nature of a Section 216 action." Without elaborating why it thought that this was such a severe problem, the court concluded that this conflict automatically meant that the class action device was not a superior mechanism for resolving the plaintiffs' state-law claims. It accordingly denied class certification of those theories and permitted the plaintiffs to move forward with their FLSA collective action. We granted the plaintiffs' petition under Rule 23(f) for an immediate appeal of the order denying class certification.

## II

Outback rests its case for affirming the district court's class-certification decision exclusively on the argument

that the plaintiffs cannot satisfy the requirements set out in Federal Rule of Civil Procedure 23(b)(3). There are a number of issues that are thus not before us. Outback does not complain about the district court's decision to permit the plaintiffs to proceed with their FLSA collective action; nor does it argue that the FLSA in any way preempts the state laws that the plaintiffs have invoked; nor has it suggested that the district court should have declined to exercise supplemental jurisdiction over the state-law claims (though the district court alluded to this question, and we return briefly to it later). In addition, no one questions whether the plaintiffs have satisfied the four requirements of Rule 23(a). This leaves us with the question whether the district court correctly ruled that the requirements of Rule 23(b)(3) could not be satisfied.

In fact, we can be more specific than that. Outback argues that even if we were inclined to reverse the district court's determination that class treatment is not a superior mechanism here, we could still affirm on the ground that individual issues predominate over class issues with respect to each of the plaintiffs' state-law claims. Although appellees are normally entitled to advance any argument that was presented before the district court in support of the order on appeal, see, *e.g.*, *Newsome v. McCabe*, 256 F.3d 747, 753 (7th Cir. 2001), this case is not a good candidate for that approach. While the predominance question was explored before the magistrate judge (who was largely persuaded by the plaintiffs' position), it is unclear what the district court thought about it. At one point, the court remarked that

it was adopting the magistrate's recommendation "in full." Standing alone, that sounds as if the district court was endorsing the magistrate judge's predominance analysis. But later, the court said, "Because the Court holds that plaintiffs cannot meet the superiority requirements with regard to the state law claims, it need not address whether common issues of fact or law predominate . . . ." This is not a clear enough ruling from the district court to support affirmance on an alternate ground. As a result, our job in this appeal is further simplified: we need address only whether the district court correctly ruled that incompatibility between section 16(b) of the FLSA and Rule 23(b)(3) means that plaintiffs trying to pursue both options in a single proceeding will never be able to demonstrate the superiority required by Rule 23(b)(3).

We review class-certification decisions deferentially, in recognition of the fact that Rule 23 gives the district courts "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Chavez v. Illinois State Police*, 251 F.3d 612, 629 (7th Cir. 2001) (internal quotation marks omitted). We will reverse the class-certification decision only when we find an abuse of discretion. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). If, however, the district court applies an incorrect legal rule as part of its decision, then the framework within which it has applied its discretion is flawed, and the decision must be set aside as an abuse. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990).

**III**

This appeal requires us to delve into the differences between an FLSA collective action and a Rule 23 class action—in particular, a class action arising under state laws governing such topics as wages and overtime. Section 16(b) of the FLSA permits an employee to participate in a collective action only if that employee consents in writing to be a plaintiff in the action. See 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought . . . ."); see also *Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004). In contrast, potential members of a Rule 23(b)(3) class must be given only the opportunity to opt out of the class action; they will automatically be included in the class if they do not speak up. See FED. R. CIV. P. 23(c)(2)(B); *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003).

As far as the district court was concerned, this distinction, and this distinction alone, rules out any chance of finding that class treatment under Rule 23(b)(3) of the state-law claims is a superior way to structure the case. This was not the first time the district court had expressed its view on this subject. See *Riddle v. National Security Agency, Inc.*, 2007 WL 2746597, at *7-10 (N.D. Ill. 2007). In both *Riddle* and the present case, the court signaled that it had reached this conclusion as a matter of the interpretation of federal statutes and rules, and not merely an exercise of discretion applicable to any particular proposed class.

Before examining the district court's class-certification analysis in greater detail, we pause briefly to address what appears to be an exception that the district court recognized to its belief that combined actions are impossible. The district court suggested that it might treat combined actions that are first filed in a state court and then removed to federal court differently from comparable cases that originate in federal court. See also *id.* at *7-9. There is no reason for any such distinction, however. An original filing and a proper removal are each appropriate ways to reach federal court. Once a suit is removed from state court to federal court, it is governed by the federal court's procedures, *Claiborne v. Wisdom*, 414 F.3d 715, 720 (7th Cir. 2005); there is no exclusion for Rule 23 or for any other rule. If there is a problem with combined actions, as the district court suggested, then the problem exists for all cases within the federal court's jurisdiction.

The district court was concerned that the collective action authorized by the FLSA would be undermined if supplemental state-law class actions were being pursued in the same case at the same time. By requiring people to opt in to the federal action, Congress limited the collective action under the FLSA to those who actively sought to assert their federal rights. As we have mentioned, however, Rule 23(b)(3) uses a default rule of inclusion and demands affirmative action to stay out of the case. The court thus correctly recognized that some of the people included as part of the state-law classes (those who did nothing) would be excluded from the FLSA collective action. The district court thought that

this outcome would undermine the intention of Congress expressed in the FLSA.

In our view, the court jumped too quickly to congressional intent. Before taking that step, we must examine the text of the FLSA itself. Nothing we find suggests that the FLSA is not amenable to state-law claims for related relief in the same federal proceeding. Section 16(b) of the FLSA allows employees to bring collective actions to supplement the enforcement powers of the Secretary of Labor under the statute. See 29 U.S.C. § 216(b) (providing that an employee's rights under the subsection "terminate upon the filing of a complaint by the Secretary of Labor"); see also *Kendall v. City of Chesapeake*, 174 F.3d 437, 443 (4th Cir. 1999). That provision providing that employees may bring actions against their employers makes no mention of state wage and labor laws. In addition, the FLSA includes an express savings clause, which provides: "No provision of this chapter . . . shall excuse noncompliance with any Federal or State law or municipal ordinance establishing [a higher minimum wage or a shorter maximum work week.]" 29 U.S.C. § 218(a). We agree with the *amici* who have filed briefs in this case that this language has the effect of preserving state and local regulations. We expect that it would normally be the case that a claim under any such state regulations would be part of the same constitutional "case" as the FLSA claim, and thus that any such state claims would fall within the district court's supplemental jurisdiction. See 28 U.S.C. § 1367(a).

There is ample evidence that a combined action is consistent with the regime Congress has established in

the FLSA. The Supreme Court's early decisions inter-preting the FLSA led to a great rush of litigation under the statute. See generally *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). Congress responded in the Portal-to-Portal Act of 1947, 61 Stat. 84, as amended, 29 U.S.C. §§ 251-262, by both eliminating "representative" actions (where employees would designate another to sue on their behalf) and by adding the opt-in provision to the statute for collective actions brought by employ-ees. The effect was to "limit[] private FLSA plaintiffs to employees who asserted claims in their own right and free[] employers of the burden of representative actions." *Hoffman-La Roche Inc.*, 493 U.S. at 173. This action was designed to eliminate lawsuits initiated by third parties (typically union leaders) on behalf of a disinterested employee (in other words, someone who would not otherwise have participated in the federal lawsuit).

Outback complains that permitting a plaintiff who ends up in only the Rule 23(b)(3) class (because she neither opted out of that class nor opted in to the FLSA collective action) to proceed as part of the state-law class is in tension with the idea that disinterested parties were not supposed to take advantage of the FLSA. But such a plaintiff is doing no such thing. She will not be entitled to a single FLSA remedy, because she is not part of the FLSA litigating group. The most that one can say is that her state claim has found its way into federal court under the court's supplemental jurisdiction. But that is a complaint that could be brought in almost every claim that rests on section 1367 jurisdiction. In the case before us, the Rule 23(b)(3) class and the federal collective

action are each comprised of a set of employees asserting injuries under either state or federal law. Should either or both groups prevail on the merits, each group member will receive only the relief that is prescribed under the law governing her part of the case. Some may be part of both the FLSA group and the Rule 23 class; some may be in one but not the other. We conclude that there is nothing in the FLSA that forecloses these possibilities.

With commendable concern for its employees' interests, Outback also urges that a combined action carries too high a potential for confusing notice to potential group members. It notes that the notice sent for purposes of the FLSA must inform recipients that they are required to opt in to the action if they wish to be included, but the notice sent for the Rule 23(b)(3) state-law claims must inform recipients that they will be part of the group unless they opt out. This is not a frivolous point, but we think that Outback has exaggerated the intractability of the problem it has identified. Although the potential for confusion created by a notice is a valid case-management consideration under Rule 23(b)(3)(D), there is no indication that the problem is any worse than countless others that district courts face with class actions.

It does not seem like too much to require potential participants to make two binary choices: (1) decide whether to opt in and participate in the federal action; (2) decide whether to opt out and *not* participate in the state-law claims. Other courts in this circuit appear to have had little trouble working out an adequate notice

in this type of case. See, *e.g.*, *O'Brien v. Encotech Const. Servs., Inc.*, 203 F.R.D. 346, 352 (N.D. Ill. 2001); *Ladegaard*, 2000 WL 1774091, at *7. When we asked at oral argument whether Outback's lawyers could provide any concrete examples of confusion resulting from this type of notification, they were unable to point to a single instance. Finally, if these actions were to proceed separately—the FLSA in federal court and the state-law class action in state court—an entirely different and potentially worse problem of confusion would arise, with uncoordinated notices from separate courts peppering the employees. As a general rule, it will usually be preferable if the notice comes from a single court, in a unified proceeding, where the court and lawyers alike are paying close attention to the overall message the participants will receive.

Because the district court ruled as a matter of law that these two actions could not proceed simultaneously, there is little in the record that throws light on whether there is anything about this particular case that would stand in the way of the combined actions the plaintiffs are seeking to pursue. Rather than addressing that here, we think it best to allow the district court to take the first look at the superiority issue from that perspective, taking into account the usual requirements spelled out in Rule 23(b)(3).

## IV

Before concluding, we need to return to the subject of supplemental jurisdiction. The district court did not dispose of the plaintiffs' state-law claims by declining to

exercise supplemental jurisdiction, but it did refer to supplemental jurisdiction as part of its Rule 23 analysis. It thought that because the set of state-law plaintiffs in the case was potentially larger than the set of FLSA plaintiffs, it made less sense to exercise supplemental jurisdiction over the state-law claims. This was yet another reason why, in its view, the proposed Rule 23(b)(3) class failed the superiority requirement. Because the district court will be revisiting the class-certification issue on remand, a few words on this point from us are in order.

As we have implied, supplemental jurisdiction was the only basis for the district court's authority over these particular state-law claims; it appears that diversity jurisdiction, which in other cases might also have been an option, was not available to these plaintiffs. While there is diversity of citizenship between the parties in this case—the defendant is a Delaware corporation with its principal place of business in Florida, see *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010), and the plaintiffs are citizens of Illinois—it is exceedingly unlikely that any one plaintiff satisfies the amount-in-controversy requirement, see 28 U.S.C. § 1332(a). We therefore proceed on the assumption that diversity jurisdiction is out of the picture.

Section 1367(a) grants the district courts supplemental jurisdiction to hear all other claims that are so related to the claims over which they have original jurisdiction that they form part of the same Article III case or controversy "[e]xcept . . . as expressly provided otherwise by

Federal statute . . . ." 28 U.S.C. § 1367(a). We agree with those of our sister circuits who have concluded that the requirements of section 1367(a) are satisfied in cases like this one, where state-law labor claims are closely related to an FLSA collective action. See *Wang*, 623 F.3d at 761-62; *Lindsay*, 448 F.3d at 420-24. We have little to add to the D.C. Circuit's detailed discussion in *Lindsay* of section 1367(a), but it is important to emphasize that the FLSA is not a statute that "expressly provide[s]" some limit to supplemental jurisdiction, as section 1367(a) contemplates that some federal statutes might. See *Lindsay*, 448 F.3d at 421-22. For the reasons we have already given, the opt-in procedures in the FLSA do not operate to limit—expressly or impliedly—a district court's supplemental jurisdiction to only those state-law claims that also involve opt-in procedures.

Once the requirements of section 1367(a) are satisfied, the district court must consider whether there is some other reason why it ought to decline to exercise supplemental jurisdiction over state-law claims. The statute explains that a district court can decline to exercise supplemental jurisdiction in the event that

> (1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

> (3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The plaintiffs' claims against Outback under the IMWL and the IWPCA do not present any complex state-law issues, and so subsection (c)(1) should not be a problem. Compare *De Asencio*, 342 F.3d at 312 (concluding that supplemental jurisdiction should not have been exercised over parallel state-law claims based in part on the conclusion that the case raised novel issues of state law that would require greater factual development than the federal issues); see also *Wang*, 623 F.3d at 761 (discussing the unique circumstances of *De Asencio*). Nor is subsection (c)(3) implicated here. Moreover, while there may in some cases be exceptional circumstances or compelling reasons for declining jurisdiction, the "conflict" between the opt-in procedure under the FLSA and the opt-out procedure under Rule 23 is not a proper reason to decline jurisdiction under section 1367(c)(4). See *Lindsay*, 448 F.3d at 424 ("[W]e doubt that a mere *procedural* difference can curtail section 1367's *jurisdictional* sweep.").

That leaves subsection (c)(2), which permits a court to decline supplemental jurisdiction if the state-law claims "substantially predominate" over the federal action. The district court concluded that the difference in size between the larger state-law class and the smaller FLSA collective action made a difference in the supplemental jurisdiction analysis. If all it meant by this was that the need to include additional parties was disfavored, then its decision was in conflict with the

statute. Section 1367(a) expressly states that "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). Inclusion of additional litigants as unnamed members of a class is of no more jurisdictional significance than joinder or intervention, and so we understand that final sentence as one that covers class actions as well.

There are other problems with the district court's approach to predominance as well. A simple disparity in numbers should not lead a court to the conclusion that a state claim "substantially predominates" over the FLSA action, as section 1367(c) uses that phrase. As the Third Circuit recognized in *De Asencio*, "[p]redomination under section 1367 generally goes to the type of claim, not the number of parties involved." 342 F.3d at 311; see also *Wang*, 623 F.3d at 762; *Lindsay*, 448 F.3d at 425. Here, as was the case in *Lindsay*, "the state law claims essentially replicate the FLSA claims—they plainly do not predominate." 448 F.3d at 425. As long as the claims are similar between the state plaintiffs and the federal action, it makes no real difference whether the numbers vary.

It is true that the Third Circuit concluded in *De Asencio* that the number of state-law plaintiffs might—and did in the case before it—so far outnumber those engaged in the FLSA collective action that "the federal action [was] an appendage to the more comprehensive state action." 342 F.3d at 312. That was part of the reason that it held that supplemental jurisdiction should not have been exercised in that case. Without taking a position on

whether a state-law class might ever so dwarf a federal FLSA action that supplemental jurisdiction becomes too thin a reed on which to ferry the state claims into federal court, we can say conclusively that in the present case the disparity between the number of FLSA plaintiffs and the number of state-law plaintiffs is not enough to affect the supplemental jurisdiction analysis. In the majority of cases, it would undermine the efficiency rationale of supplemental jurisdiction if two separate forums were required to adjudicate precisely the same issues because there was a different number of plaintiffs participating in each claim. See *Williams Electronic Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007) ("The rationale of the supplemental jurisdiction is economy in litigation, and so a relinquishment of it that clearly disserved economy would be a candidate for reversal."). In this case, there are approximately 30 participants in the FLSA collective action and potentially 180 to 250 people who might participate in any of the three Rule 23 classes. Although that is a greater disparity than the D.C. Circuit considered in *Lindsay*, where there were 228 people in the state-law class and 204 proceeding under the FLSA, see 448 F.3d 425 n.12, the overall numbers are still low. Our case is quite unlike *De Asencio*, where the Third Circuit was confronted with an FLSA collective action involving 447 people and a 23(b)(3) class of 4,100 plaintiffs. See 342 F.3d at 305.

We agree with the D.C. Circuit in *Lindsay* and the Ninth Circuit in *Wang* that the Third Circuit decision in *De Asencio* represents only a fact-specific application of

well-established rules, not a rigid rule about the use of supplemental jurisdiction in cases combining an FLSA count with a state-law class action. In our case, the record reflects no reason to doubt that it is sensible to litigate all theories in a single federal proceeding. The identity of the issues, the convenience to both plaintiffs and defendants of not having to litigate in multiple forums, and the economy of resolving all claims at once suggests that an exercise of supplemental jurisdiction will normally be appropriate. In all but the most unusual cases, there will be little cause for concern about fairness or comity.

* * *

We conclude that the district court's decision denying certification of plaintiffs' proposed classes under Rule 23 amounted to an abuse of discretion. We REVERSE the district court's denial of class certification, and we REMAND for further proceedings consistent with this opinion.